IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

ROXANNE MOON,                    )
                                 )
            Plaintiff,           )
                                 )
    vs.                          )          6:16-cv-1233-LSC
                                 )
NANCY BERRYHILL,                 )
Commissioner of Social Security, )
                                 )
            Defendant.           )

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Roxanne Moon, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Moon timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Moon was forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a college education. (Tr. at 35, 97.) Her past work experiences include employment as a dispatcher, secretary, emergency medical technician, personnel instructor, and collections' clerk. (Tr. at 50, 77-78.)

Ms. Moon claims that she became disabled on July 5, 2011, because of Sjögren's syndrome, kidney disease, fibromyalgia, and neuropathy. (Tr. at 172, 189.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Moon meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 18, Finding No. 1.) He further determined that Ms. Moon has not engaged in SGA since July 5, 2011, the alleged onset of her disability. (Tr. at 18, Finding No. 2.) According to the ALJ, Plaintiff's Sjögren's syndrome, fibromyalgia, IgA nephropathy, Hashimoto's thyroiditis, and neuropathy are considered "severe" based on the requirements set forth in the regulations. (Tr. at 18, Finding No. 3.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 28, Finding No. 4.) The ALJ did not find Ms. Moon's allegations to be totally credible, and he determined that she has the RFC to perform light work with

the following limitations: occasional stooping and crouching; no lower extremity pushing and/or pulling; no climbing; no driving; no right upper extremity pushing and/or pulling or overhead reaching; and no unprotected heights. (Tr. at 28, Finding No. 5).

The ALJ enlisted a vocational expert ("VE") to reach the decision that Ms. Moon is able to perform her past relevant work as a collections clerk and dispatcher, and thus she is not disabled as that term is defined by the regulations. (Tr. at 34, Finding Nos. 6-7.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Ms. Moon alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she challenges the ALJ's decision to give little weight to the opinion of her treating physician, Dr. David McClain, and partial weight to the opinion of the one-time consultative examiner, Dr. Samia Moizuddin. Second, she contends the ALJ erred in discounting her subjective complaints of disabling pain.

### A.    Medical Opinion Evidence

As a general matter, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you

but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, the opinions of a one-time examiner or of a non-examining source are not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Further, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Procedurally, the ALJ must articulate the weight given to different medical opinions and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal

quotations omitted). "Good cause" for discounting a treating physician's opinion exists when: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in a physician's evaluation of a plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

### 1.     Dr. McClain's Opinion

Dr. McClain is a rheumatologist who treated Plaintiff for four and a half years. Plaintiff visited Dr. McClain on December 31, 2012, complaining of fibromyalgia and Sjögren's syndrome. (Tr. at 484.) She complained of "fibro fog" and memory problems but denied difficulty concentrating. (*Id.*) Dr. McClain noted the following: Plaintiff's eyes were equal and round, her lungs were clear to auscultation, she had a normal heart rate and rhythm, she had no cervical spine tenderness, she had normal mobility and curvature in the cervical spine, thoracic spine, and lumbar spine, she had 10 out of 18 tender points, and she received an injection to treat shoulder pain. (Tr. at 488.) Dr. McClain diagnosed Plaintiff with fibromyalgia, Sjögren's syndrome, calcifying tendinitis of shoulder, hypermobility syndrome, chronic lymphocyte thyroiditis, and idiopathic peripheral neuropathy. (Tr. at 489.) He noted that Plaintiff's fibromyalgia and Sjögren's syndrome were in stable condition. (Tr. at 484.) Dr. McClain advised Plaintiff to participate in whirlpool spa treatment for chronic musculoskeletal pain and fibromyalgia. (Tr. at 489.)

On April 23, 2013, Plaintiff returned to Dr. McClain. (Tr. at 477.) Dr. McClain reported that Plaintiff's fibromyalgia and Sjögren's syndrome were again in stable condition. (*Id.*) Plaintiff complained of memory impairment but denied difficulty concentrating. (*Id.*) On examination, Plaintiff's lungs were clear to

auscultation, she had a normal heart rate and rhythm, her abdomen was soft and non-tender, she had no cervical spine, thoracic spine, or lumbar spine tenderness. (Tr. at 481, 482.) Plaintiff had tenderness in her right shoulder and 14 out of 18 tender points. (Tr. at 482.) Her cranial nerves were intact. (*Id.*) Plaintiff received an injection to treat joint pain. (*Id.*)

Plaintiff returned to Dr. McClain on May 29, 2013. (Tr. at 547.) Dr. McClain again noted that Plaintiff's fibromyalgia and Sjögren's syndrome were in stable condition. (*Id.*) Plaintiff complained of memory impairment, but denied difficulty concentrating. (*Id.*) Plaintiff was positive for 14 out of 18 trigger points. (Tr. at 552.) Her range of motion in all joints was full, and she exhibited no joint deformities. (*Id.*) She exhibited no motor or sensory deficits. (*Id.*) She was alert and oriented, and displayed no unusual anxiety or evidence of depression. (*Id.*) Plaintiff received an injection to treat joint pain. (*Id.*)

Plaintiff returned to Dr. McClain for care on October 31, 2013. (Tr. at 511.) Dr. McClain reported that Plaintiff's fibromyalgia and Sjögren's syndrome were improving. (*Id.*) Plaintiff had full range of motion in all joints and no joint deformities. (Tr. at 517-18.) Dr. McClain reported that Plaintiff had 14 out of 18 total tender points, and her cranial nerves were intact. (Tr. at 517.) Plaintiff reported that she no longer experienced headaches with her prescription

medication Nucynta, and that she was able to go some days without taking Lortab for pain. (Tr. at 511.) She complained of memory impairment and difficulty concentrating. (*Id.*) Plaintiff was alert and oriented, and exhibited no unusual anxiety or depression. (Tr. at 517.)

Plaintiff returned to Dr. McClain for care on February 27, 2014. (Tr. at 500.) Plaintiff continued to report improvement with Nucynta. (*Id.*) Plaintiff said she was "much better." (*Id.*) She again complained of memory impairment and difficulty concentrating. (*Id.*) Dr. McClain stated that Plaintiff had 16 out of 18 total tender points. (Tr. at 506.) Plaintiff received an injection to treat her symptoms (*Id.*)

Dr. McClain testified by deposition on May 9, 2014. (Tr. at 663-87.) He stated that Plaintiff could not work because of pain, fatigue, cognitive dysfunction, and memory problems. (Tr. at 686). He opined that she could not maintain concentration, attention, and pace at a normal job. (Tr. at 684). He also explained that when he says an individual is doing "well," that term was relative and that a person could be doing well and still be totally disabled. (Tr. at 685-86).

On August 26, 2014, Plaintiff returned to Dr. McClain for care. (Tr. at 753.) Dr. McClain reported that she was doing better, but still experienced severe pain and fatigue. (*Id.*) Dr. McClain again stated that Plaintiff was totally disabled. (*Id.*)

He advised Plaintiff to continue taking her prescribed medications and return for care in three months. (*Id.*)

Plaintiff challenges the ALJ's decision to give little weight Dr. McClain's testimony during his May 2014 deposition that Plaintiff could not work. Her claim fails because, as an initial matter, Dr. McClain's opinion that Plaintiff is disabled is not entitled to any significant weight because it is a statement of disability that is reserved for the ALJ alone. (Tr. at 685-86). Aside from that, the ALJ provided specific reasons, supported by substantial evidence, for giving little weight to Dr. McClain's opinion. An ALJ may discount a treating physician's opinion when it is inconsistent with the record evidence. *See* 20 C.F.R. § 404.1527(c)(2), (c)(4); *Crawford*, 363 F.3d at 1159-60. As the ALJ explained, Dr. McClain's opinion was inconsistent with his own repeated statements that Plaintiff's Sjögren's syndrome and fibromyalgia were stable and improving. (Tr. at 34, 477, 500, 511, 520, 547). This notation that these conditions were stable is in accord with the opinion of Plaintiff's internist whom she visited around the same time in July 2013 and who noted that Plaintiff's fatigue had improved and her fibromyalgia were stable. (Tr. at 690). Both are inconsistent with Dr. McClain's later deposition testimony that Plaintiff's autoimmune disorders caused disabling symptoms. Plaintiff protests that, as Dr. McClain testified, an individual can be "improving," "stable," or

"doing well," and still be totally disabled. (Tr. at 685-86). However, the ALJ was not persuaded by Dr. McClain's testimony in this regard, a judgment that is supported by substantial evidence. (Tr. at 34). Dr. McClain's testimony about an individual being stable or doing well and still being disabled was a general speculative statement and not about the particular treatment notes at issue here. (Tr. at 685-86). Here, not only did Dr. McClain repeatedly state, during multiple office visits, that Plaintiff's autoimmune conditions were improving, he also noted that Plaintiff was doing better with Nucynta and needed to take fewer narcotics. (Tr. at 500, 511, 520). Therefore, his treatment notes do not support his testimony.

The ALJ also explained that Dr. McClain's opinion was inconsistent with particular treatment notes showing normal mobility and full range of motion in particular. (Tr. at 34, 488, 506, 517, 525, 552). The ALJ observed that while Plaintiff was positive for tenderness in trigger point areas, which is one of the only objective means of testing for fibromyalgia,[1] she did not exhibit edema, muscle

---

[1] Social Security Ruling ("SSR") 12-2p governs how the Commissioner must consider fibromyalgia in the sequential evaluation process. *See* SSR 12-2p, 2013 WL 3104869 at *1, n.1 ("The policy interpretations in this SSR also apply . . . to claims above the initial level."). The Ruling essentially explains that fibromyalgia is a syndrome in which a person has long-term, body-wide pain and tenderness in the joints, muscles, tendons, and other soft tissues. *See id.* It also acknowledges that this condition has also been linked to fatigue, sleep problems, headaches, depression, and anxiety. *See id.* SSR 12-2p provides that a person can establish that he or she has a medically determinable impairment of fibromyalgia by providing evidence from an acceptable medical source. *Id.* at *2. Moreover, the Ruling provides:

atrophy or weakness, or difficulty with mobility. (Tr. at 34). Plaintiff challenges the ALJ's reasoning on this particular point, asserting that that "fibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms,' and that the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence.'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Still, Plaintiff must produce some evidence of functional limitations resulting from an impairment to prove it is disabling. *See generally Moore*, 405 F.3d at 1213 n.6 (stating that the mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work and that severity must be measured in terms of its effect upon ability to work). Other cases in which an ALJ's decision on a claimant's fibromyalgia has been affirmed are in accord with the ALJ's determination here. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) ("Dr. Davina-Brown's physical examinations of Harrison were consistently unremarkable, and she never found that Harrison suffered from any of

---

[W]e cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.

*Id.*

the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points."); *Hoffman v. Astrue*, 259 F. App'x 213, 217-18 (11th Cir. 2007) (stating "[a]lthough the record established a diagnosis of fibromyalgia, the record does not support a finding that [claimant's] physical condition qualified her for disability benefits").

Additionally, Dr. McClain opined that an employer would not want to hire someone, such as Plaintiff, who had trouble with memory, concentration, and fatigue. (Tr. at 686.) However, Plaintiff displayed normal mental functioning throughout the relevant period. Dr. McClain consistently reported that Plaintiff was oriented in all spheres, that her attention and concentration were good, and that she did not exhibit signs of unusual anxiety or evidence of depression. (Tr. at 482, 488, 493, 506, 517, 525, 552.) Although Plaintiff complained of memory impairment, Dr. McClain never noted any such impairment in any of his treatment notes. As the ALJ noted, the evidence of normal mental functioning undermined Dr. McClain's opinion that Plaintiff's fibromyalgia would cause disabling cognitive dysfunction, attention deficits, and memory problems.

For the forgoing reasons, the Court is of the opinion that the ALJ had good cause to disregard Dr. McClain's May 2014 statement regarding Plaintiff's condition.

### 2.    Dr. Moizuddin's Opinion

On May 28, 2014, Plaintiff underwent a consultative examination with Dr. Moizuddin on behalf of the Social Security Administration. (Tr. at 733). Dr. Moizuddin noted the following: Plaintiff was in no acute distress (Tr. at 734); her muscle strength was 5/5 in all muscle groups (*id.*); her deep tendon reflexes were normal and symmetric (*id.*); she exhibited bilateral knee crepitus (*id.*); squatting, heel walk, and toe walk were normal (*id.*); her motor strength and dexterity were normal (tr. at 725); and she exhibited full range of motion in all joints. (Tr. at 724-25). Dr. Moizuddin opined that Plaintiff could lift up to 20 pounds occasionally and could carry up to 10 pounds occasionally. (Tr. at 726). She stated that she could sit for 1 hour at a time, stand for 30 minutes at a time, and walk for 30 minutes at a time. (Tr. at 727). She could sit for 3 hours per day, stand 30 minutes per day, and walk 1 hour per day. (*Id.*). She could never reach overhead, occasionally reach in other directions, frequent finger and handle, continuously feel, and occasionally push/pull. (Tr. at 728). She could occasionally operate foot controls. (*Id.*). She could never climb ladders, ropes, or scaffolds, occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl, and occasionally balance. (Tr. at 729). She could never work around unprotected heights, pulmonary irritants, or temperature extremes. (Tr. at 730).

Plaintiff also challenges the ALJ's decision to give only partial weight to Dr. Moizzudin's opinion. As an initial matter, Dr. Moizuddin was a one-time examiner, and the opinion of a one-time examiner is not entitled to any particular deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Further, an ALJ may reject any medical opinion if the evidence supports a contrary finding. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Here, the ALJ properly found that Dr. Moizuddin's opined functional limitations were inconsistent with his own observations during the consultative examination. (Tr. 33). As the ALJ noted, Dr. Moizuddin noted that Plaintiff's muscle strength and gait were normal and that she did not have trouble ambulating during the visit. (Tr.at 725, 734). Further, she exhibited full range of motion in all joints. (Tr. at 724-25). One would expect that an individual experiencing disabling pain from an autoimmune disorder would demonstrate some abnormality of function on physical exam or some indication of distress. However, Dr. Moizuddin observed that Plaintiff was in no acute distress. (Tr. at 734). Dr. Moizuddin's notation that Plaintiff denied memory loss or confusion further undermines his opinion. (Tr. at 734). Because Dr. Moizuddin's opinion was inconsistent with his examination notes, the ALJ properly gave it partial weight. (Tr. at 33).

As explained above, the ALJ articulated reasons for giving little weight to the opinions of Drs. McClain and Moizuddin, and substantial evidence supports those reasons.

## B.    Credibility Determination

Plaintiff testified at her hearing that while she has numerous health problems, her main problems stem from her various autoimmune diseases. (Tr. at 271.) Plaintiff alleged that in July of 2011 she reached the point where she "could not consistently make it through a workday anymore." (*Id.*) She explained that she has problems just sitting, standing, or walking on any continuous basis; that she spends the better part of the waking day between 8:00 am and 5:00 pm trying to be comfortable, in which period she usually has to lie down five to six hours. (*Id.*) Plaintiff added, on a "good day" she has to lie down three to four hours, and on a "bad day" she lies down practically all day long. (*Id.*)

Plaintiff challenges the ALJ's statement that he did not find her testimony entirely credible. When a plaintiff attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. §

416.929d(a), (b); SSR 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore*, 405 F.3d at 1212 n.4. "When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote,* 67 F.3d at 1562. The Commissioner's regulations set forth the following factors an ALJ should consider when evaluating a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) medications taken to alleviate pain, including side effects and effectiveness; (5) treatment received to relieve pain; and (6) any other measures the claimant uses to relieve pain. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (2016). The ALJ evaluates

these factors in connection with the other evidence in the record to make a credibility determination. 20 C.F.R. § 404.1529(c)(4).

In this case, the ALJ properly followed the two-step process in assessing Plaintiff's alleged symptoms and ultimately found that her complaints of disabling pain were not entirely credible. (Tr. at 31-33.) The ALJ articulated reasons, supported by substantial evidence, for his credibility finding. Specifically, the ALJ articulated that the record shows that Plaintiff is able to perform daily activities that require a good deal of concentration and exertion; Plaintiff's impairments improved with treatment; and the objective evidence undermined Plaintiff's allegations that she was totally disabled. (Tr. at 31-32.)

The ALJ noted that Plaintiff enjoys reading and watching television on a daily basis. (Tr. at 32, 494.) She also drives as necessary, does laundry, loads the dishwasher, vacuums, walks the dogs for exercise sometimes, goes grocery shopping, prepares food, visits her parents when she is able, and cleans. (Tr. at 56-57, 210-14, 494.) The ALJ found that these activities contradict her allegations of disabling symptoms. Plaintiff's argument that she only performs these activities on good days is unpersuasive, as she made no such qualification in her statements to Dr. Gragg, Plaintiff's consulting psychologist, or in her function report. (Tr. at 210-15, 494.) She also suggests that the ALJ improperly relied on her daily activities in

his credibility finding. However, the regulations permit an ALJ to consider a claimant's activities of daily living. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (holding the regulations do not "prevent the ALJ from considering daily activities at the fourth step of the sequential process"). Further, as noted above, fibromyalgia cases often lack objective evidence and rely heavily on a plaintiff's subjective complaints. *See Moore*, 405 F.3d at 1211. Therefore, an ALJ may rely on inconsistencies between a Plaintiff's subjective allegations and diverse daily activities. *See id.* (upholding an ALJ's credibility determination in a fibromyalgia case where the ALJ relied on the claimant's activities of daily living instead of the lack of objective findings); *see also* SSR 12-2p, 2012 WL 3017612 (S.S.A. July 25, 2012) (stating that if the objective evidence does not substantiate a claimant's subjective allegations, the ALJ will look at all of the evidence, including the claimant's daily activities and other factors).

The ALJ also noted that Plaintiff's impairments improved with treatment. (Tr. at 27, 31-33). This factor is relevant in evaluating a claimant's credibility. *See* 20 C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(iv); *Chereza v. Comm'r of Soc. Sec. Admin.*, 379 F. App'x 934, 939 (11th Cir. 2010) (holding impairments were not disabling where medication controlled majority of claimant's symptoms). Plaintiff stated that eye drops improved her dry eyes, Nucynta made her feel much better,

Prozac was effective, and that she was doing well after her hospitalization for abdominal issues. (Tr. at 349, 386, 472, 493, 500, 511, 520). She also stated that acupuncture helped. (Tr. at 477). These statements undermine her subjective allegations of disabling symptoms.

In this case, the ALJ's decision revealed that he articulated several reasons to discredit Plaintiff's subjective complaints of pain that are supported by substantial evidence in the record.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Moon's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 8, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704